UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW J.J. WOLF, R. HANS KRUGER, and DAVID S. BEGLEY,[1] <br><br>    Plaintiff, <br><br>    v. <br><br> C.L. "BUTCH" OTTER; LAWRENCE WASDEN; IDAHO STATE BOARD OF CORRECTIONS; ROBIN SANDY, J.R. VAN TASSEL; JAY NIELSON; IDAHO COMMISSION OF PARDONS AND PAROLE; OLIVIA CRAVEN; BILL YOUNG; MARK FUNAIOLE; JANE DRESSEN; NORMAN LANGERAK; MIKE MATTHEWS; BRENT REINKE; CORRECTIONS CORPORATION OF AMERICA, INC.; TIM WENGLER; JASON ELLIS; CORIZON INC., each sued in their individual and official capacities and their successors in office, <br><br>    Defendants. | Case No. 1:12-cv-00526-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

      Plaintiffs, prisoners in the custody of the Idaho Department of Correction (IDOC), are proceeding pro se and in forma pauperis in this civil rights action. Now pending before the Court are the following motions: (1) Defendant Reinke's Motion to Dismiss (Dkt. 46), which will be treated as a motion for summary judgment (*see* Dkt. 80); (2) a

---

[1] Plaintiff Begley has voluntarily dismissed his claims in this action. (Dkt. 40.)

**MEMORANDUM DECISION AND ORDER - 1**

Motion to Dismiss Injunctive Relief Claims (Dkt. 62) filed by Defendants CCA and Ellis ("CCA Defendants"); and (3) Plaintiffs' Motion for Contempt (Dkt. 81).[2]

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. D. Idaho L. R. 7.1. Accordingly, the Court enters the following Order granting in part Defendant Reinke's Motion, granting the CCA Defendants' Motion, and denying Plaintiffs' Motion for Contempt.

## INTRODUCTION

The parties are familiar with the factual and procedural history of this case. In its Initial Review Order, the Court reviewed Plaintiffs' Complaint pursuant to 28 U.S.C. § 1915A and concluded that Plaintiffs could proceed on the following claims:

- Third, Fourth, Fourteenth, and Fifteenth Claims for Relief against Defendant Reinke (for injunctive relief only), based on the alleged denial of adequate ventilation in Unit 14 of the Idaho State Correctional Institution (ISCI) and the West Wing Units at the Idaho Correctional Center (ICC).

- Fifth, and Sixth Claims for Relief against Defendant Reinke (for injunctive relief only), based on the alleged denial of adequate HVAC at Units 7, 9, 10, 11, and 13 at ISCI.

- Twelfth, Thirteenth, Twentieth, and Twenty-First Claims for Relief against Defendant Reinke and former

---

[2] Also pending are Defendant Reinke's unopposed Motion to Seal (Dkt. 70) and Plaintiffs' unopposed Motion to Lodge Plaintiff Wolf's Rule 26 Disclosures (Dkt. 74). These motions will be granted.

**MEMORANDUM DECISION AND ORDER - 2**

> Defendant Wengler (for injunctive relief only), as well
> as Defendant Corrections Corporation of America
> (CCA) (for injunctive relief and monetary damages),
> based on the alleged denial of adequate dayroom space
> at the ICC West Wing Units and the alleged denial of
> adequate out-of-cell time at ICC and ISCI.
>
> • Twenty-Fourth Claim for Relief against Defendant
> Reinke (for injunctive relief only), based on the alleged
> failure to protect inmates from attacks by other
> inmates.

(Dkt. 27.)[3] Plaintiffs' claims are all based on a central theme: that systematic overcrowding in the ISCI and ICC prisons has led to allegedly unconstitutional conditions of confinement.

Defendant Ellis, the current warden of ICC, was later substituted as a Defendant in place of Defendant Wengler, and Defendant Wengler was dismissed from this action. (Dkt. 57.) The CCA Defendants have filed an Answer to Plaintiffs' Complaint (Dkt. 43), but Defendant Reinke has not.

On March 25, 2014, the Court dismissed Plaintiff Kruger's claims against the CCA Defendants because Kruger did not exhaust available administrative remedies within the ICC grievance system prior to filing suit. (Dkt. 76.) In the meantime, Defendant Reinke filed a motion to dismiss all of the claims against him on the following grounds: (1) Plaintiff Kruger did not exhaust available administrative remedies with respect to any of

---

[3] The Court also allowed Plaintiff Begley an opportunity to supplement his claims that he was denied a timely parole revocation hearing and parole revocation counsel, but Plaintiff Begley later voluntarily dismissed all of his claims without filing a supplement.

**MEMORANDUM DECISION AND ORDER - 3**

his claims; and (2) Plaintiffs' Complaint failed to state a claim upon which relief could be granted. (Dkt. 46.) The Court notified the parties that it intended to treat Defendant Reinke's motion on exhaustion as a motion for summary judgment, and the parties have now filed supplemental briefs in response. (Dkt. 80, 82, & 83.) The CCA Defendants have also moved to dismiss all claims for injunctive relief against them on the grounds that Plaintiffs Wolf and Kruger are no longer incarcerated at ICC and that their claims for injunctive relief against the CCA Defendants are therefore moot. (Dkt. 62.)

## DEFENDANT REINKE'S MOTION TO DISMISS, TREATED AS A RULE 56 MOTION FOR SUMMARY JUDGMENT

**1.      Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[4] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548

---

[4] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 4**

U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, ___ F.3d ___, 2014 WL 1317141, *8 (9th Cir. April 3, 2014) (en banc).

Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff

took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 2014 WL 1317141, at *8, 13.

"An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010). Further, a prisoner is not responsible for ensuring that "prison officials actually provide the relief that they have promised." *Id.*

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, so long as the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 2014 WL 1317141 at *5. If, however, either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.* In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at *6.

Defendant Reinke has withdrawn his motion to dismiss Plaintiff Wolf's claims. (Dkt. 65 at 6.) Therefore, the only remaining issue in Defendant Reinke's Motion is whether Plaintiff Kruger exhausted his administrative remedies with respect to the various claims in this action. The Court has already determined that Defendant Reinke's motion to dismiss Plaintiff Kruger's claims for failure to exhaust will be treated as a Rule 56 motion for summary judgment. (Dkt. 80.)

**MEMORANDUM DECISION AND ORDER - 6**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other

materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the

moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

2.  **Grievance Procedure of the Idaho Department of Correction (IDOC)**

The IDOC's grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Whittington Aff., Dkt. 46-2, at ¶ 5.) If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form. (*Id.* at ¶ 6.)

A Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. (*Id*. at ¶ 6.) Grievances must contain "specific information including the nature of the complaint, dates, places, and names," and only one issue may be raised in each grievance. (*Id.* at ¶ 7.) When the grievance coordinator receives an inmate grievance, she "enters the grievance information into the Corrections Integrated System (CIS)," an

electronic database used to track grievances, "if the grievance form is completed correctly."[5] (*Id*.) The Grievance Coordinator then assigns the grievance to the staff member most capable of responding to and, if appropriate, resolving the issue. That staff member responds to the grievance and returns it to the Grievance Coordinator. The Grievance Coordinator then logs the staff member's response into the CIS and forwards the grievance to a "reviewing authority," usually a deputy warden. (*Id*.)

The reviewing authority reviews the grievance, including the staff member's response, and must deny, grant, or modify the grievance. The reviewing authority then returns the grievance to the Grievance Coordinator, who logs the response into the database and sends the completed grievance back to the inmate. (*Id*.) If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. (*Id.* at ¶ 8.) The "appellate authority," or the warden, is the person who usually decides an inmate's grievance appeal. (*Id*. at ¶ 9.)

Not until the completion of all three of these steps—Concern Form, Grievance Form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 10.)

3. **Discussion**

Defendant Reinke has met his initial burden of showing that Plaintiff Kruger did not exhaust available administrative remedies with respect to most of his claims. The

---

[5] If the grievance is not correctly completed, the Grievance Coordinator returns the incorrectly completed grievance to the inmate, and the inmate "may then correct the Grievance for processing." (Whittington Aff. at ¶ 7.)

**MEMORANDUM DECISION AND ORDER - 10**

grievance records submitted by Defendant Reinke show that Plaintiff Kruger did not file any grievances relating to his claims of inadequate ventilation, inadequate HVAC, and inadequate dayroom space and out-of-cell time at ISCI. (Whittington Aff. at ¶¶ 13-18 and Dkt. 46-6 to 46-8.) Plaintiff Kruger has not disputed Defendant Reinke's evidence as to these claims. Rather, Plaintiff Kruger alleges that IDOC has a policy of improperly screening grievances and refusing to process grievances and that, therefore, Kruger was not required to exhaust these issues. (Dkt. 82 at 6.) In support of this contention, Plaintiffs Kruger submitted an affidavit, as well as affidavits from other prisoners, including Plaintiff Wolf, stating that the inmates had, or knew of inmates who had, attempted to grieve issues but who were not satisfied with the procedures required by the applicable grievance process. (See Dkt. 82-1 to 82-2.)[6] None of these affidavits support the claim that prison personnel had a policy of *improperly* screening grievances to ensure compliance with the grievance procedure. Further, the allegation that some grievances filed by other inmates were not answered does not give rise to an inference that Plaintiff Kruger exhausted all available remedies with respect to his claims in this action.

---

[6] Defendant Reinke moves to strike these affidavits. (Dkt. 84.) However, evidence need not be admissible to be considered on summary judgment; rather, the evidence need only be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Further, after the 2010 revisions to Rule 56 of the Federal Rule of Civil Procedure, a party need not file a separate motion to strike when objecting to the admissibility of evidence submitted at the summary judgment stage. Fed. R. Civ. P. 56, advisory committee's note. Therefore, the Motion to Strike will be denied. Defendants may renew any objections at a later date if this case proceeds to trial. *See id.* ("[F]ailure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.").

**MEMORANDUM DECISION AND ORDER - 11**

Therefore, all claims by Plaintiff Kruger based on inadequate ventilation, inadequate HVAC, and inadequate dayroom space and out-of-cell time will be dismissed.

However, Plaintiff Kruger has shown that he did, in fact, exhaust available administrative remedies with respect to his failure to protect claim. The evidence shows that in August and September 2012, Plaintiff Kruger sent three concern forms to Warden Randy Blades at ISCI regarding inmate-on-inmate violence and bullying. (Affidavit of Dale Koch, Dkt. 69-1, Ex. C.) In response to the first concern form, Warden Blades responded, "Thank you for the information—*we took some measures last week*—things seemed to improve—if not, let me know—Thanks." (*Id*.) (emphasis added). Blades responded to the second concern form as follows: "Mr. Kruger—not having given any specifics, I'm not quite sure what you mean but do appreciate the input. I know we have problematic inmates in [administrative segregation] wanting out and may occasionally make a mistake, but that is not intended—*I will study your conclusions*." (*Id*.) (emphasis added). Plaintiff Kruger's third concern form was "forwarded to investigators." (*Id*.)

Because these responses by the warden constituted a grant of relief or, at the very least, "a partial grant that satisfie[d]" Plaintiff Kruger, Kruger was not required to continue to pursue the issue through the remaining steps in the grievance process. *Harvey*, 605 F.3d at 685. The responses that Plaintiff Kruger received on his concern forms did not deny his requested relief, but rather indicated that the prison was addressing the problem. Kruger was not required to pursue the matter any further. Defendant Reinke's

attempts to distinguish *Harvey* are unpersuasive. (See Dkt. 83 at 5-6.)

Defendant Reinke also argues that the concern forms submitted by Plaintiff Kruger did not specifically complain that overcrowding contributed to the violence problem identified by Kruger. Reinke contends, without citation to any legal authority, that Plaintiff Kruger did not exhaust his administrative remedies because his "concern forms relate only to allegations of violence in the prison and do not specifically address any issues related to overcrowding." (Dkt. 83 at 4.) However, an inmate need not guess as to the reasons behind a particular problem when exhausting the grievance process. Inmates will often have little to no information regarding the inner workings and policies of the prison in which they are confined. Prisoners that have identified a problem within the prison are not required to investigate and correctly determine the myriad issues that may have contributed to that problem in order to properly exhaust administrative remedies. Plaintiff Kruger alerted IDOC officials to violence in the prison by other inmates, and officials appeared to be addressing the issue—thus leading Plaintiff Kruger to conclude that further administrative remedies were unnecessary.

For the foregoing reasons, the Court will dismiss Plaintiff Kruger's claims against Reinke only with respect to inadequate ventilation, inadequate HVAC, and inadequate dayroom space and out-of-cell time for failure to exhaust. Plaintiff Kruger's failure to protect claims against Reinke remain at issue in this action.

# CCA DEFENDANTS' MOTION TO
# DISMISS INJUNCTIVE RELIEF CLAIMS

Plaintiffs are no longer incarcerated at ICC. An inmate's transfer or release from prison generally renders his injunctive relief claims moot. *See Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985). *Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995). Therefore, the Court will grant the CCA Defendants' Motion to Dismiss Injunctive Relief Claims. Because Plaintiffs were allowed to proceed against Defendant Ellis only for injunctive relief, Defendant Ellis will be dismissed from this action, along with the other Defendants against whom Plaintiffs have not been allowed to proceed. (*See* Dkt. 27.)

# PLAINTIFFS' MOTION FOR CONTEMPT

Plaintiffs request that the Court hold Defendant Reinke and his counsel in contempt for allegedly failing to comply with two Court Orders: the Court's June 13, 2013 Initial Review Order (Dkt. 27), and the Court's January 22, 2014 Order (Dkt. 68). The Court finds that Defendant Reinke attempted in good faith to initially comply with the Court's order to produce all grievance-related correspondence. Plaintiffs then identified several documents that were missing from this initial production. The Court ordered Defendant Reinke to produce those documents, and he did so. There is no evidence that Defendant Reinke or his attorneys acted in bad faith. Therefore, Plaintiffs' Motion for Contempt will be denied.

# CONCLUSION

Although Plaintiff Kruger did not exhaust all available administrative remedies

with respect to his claims of inadequate ventilation, inadequate HVAC, and inadequate dayroom space and out-of-cell time, he did exhaust those remedies with respect to his failure to protect claim. Further, Plaintiffs' claims against the CCA Defendants for injunctive relief are moot. Therefore, the Court will grant in part Defendant Reinke's Motion and grant the CCA Defendants' Motion.

## ORDER

**IT IS ORDERED:**

1. Defendant Reinke's Motion to Dismiss, treated as a motion for summary judgment (Dkt. 46), is GRANTED IN PART and DENIED IN PART. Plaintiff Kruger's claims against Defendant Reinke with respect to inadequate ventilation, inadequate HVAC, and inadequate dayroom space and out-of-cell time are DISMISSED. Because Plaintiff Kruger's claims against the CCA Defendants have already been dismissed (*see* Dkt. 76), Plaintiff Kruger's only remaining claim is his failure to protect claim against Defendant Reinke, for injunctive relief only.

2. Defendant Reinke's Motion to Strike Portions of the Affidavits of Wolf, Kruger, and Allison in Support of Plaintiffs' Supplemental Response (Dkt. 84) is DENIED.

3. The CCA Defendants' Motion to Dismiss Injunctive Relief Claims (Dkt. 62) is GRANTED. All injunctive relief claims against Defendants CCA and

Ellis are DISMISSED. If Plaintiffs are transferred back to ICC during course of these proceedings, they may move to renew their injunctive relief claims against Defendants CCA and Ellis.

4. For the reasons stated in the Initial Review Order (Dkt. 27), the following claims are DISMISSED in their entirety: Plaintiffs' First, Second, Seventh, Eighth, Ninth, Tenth, Eleventh, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twenty-Second, Twenty-Third, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, and Thirtieth claims for relief.

5. For the reasons stated in this Order and in the Initial Review Order (Dkt. 27) the following Defendants are DISMISSED from this action: Defendants Otter, Wasden, Sandy, Van Tassel, Nielson, Craven, Funaiole, Dressen, Langerak, Matthews, Corizon, and Ellis. Defendants Reinke and CCA are now the only Defendants remaining in this action.

6. In accordance with Plaintiff Begley's Notice of Voluntary Dismissal (Dkt. 40), Plaintiff Begley is formally DISMISSED from this action.

7. Plaintiffs' Motion for Contempt (Dkt. 81) is DENIED.

8. Defendant Reinke's unopposed Motion to Seal (Dkt. 70) is GRANTED. The documents subject to the Motion to Seal (submitted as Dkt. 71) are hereby SEALED.

9. Plaintiffs' unopposed Motion to Lodge Plaintiff Wolf's Rule 26 Disclosures (Dkt. 74) is GRANTED.

10. Defendant Reinke shall file his Answer **within 21 days** of the date of this Order, after which the Court will issue a scheduling order to govern the remainder of these proceedings.

DATED: **June 3, 2014**

B. LYNN WINMILL
Chief Judge
United States District Court