UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW J.J. WOLF, R. HANS KRUGER, and DAVID S. BEGLEY,<br><br>       Plaintiffs,<br><br>       v.<br><br>C.L. "BUTCH" OTTER; LAWRENCE WASDEN; IDAHO STATE BOARD OF CORRECTIONS; ROBIN SANDY, J.R. VAN TASSEL; JAY NEILSON; IDAHO COMMISSION OF PARDONS AND PAROLE; OLIVIA CRAVEN; BILL YOUNG; MARK FUNAIOLE; JANE DRESSEN; NORMAN LANGERAK; MIKE MATTHEWS; BRENT REINKE; CORRECTIONS CORPORATION OF AMERICA, INC.; TIM WENGLER; CORRISON INC., each sued in their individual and official capacities and their successors in office,<br><br>       Defendants. | Case No. 1:12-cv-00526-BLW<br><br>MEMORANDUM DECISION AND ORDER |

# I
# INTRODUCTION

Before the Court is Defendant Kevin Kempf's second motion for summary judgment (Dkt. 179), as well as a host of motions filed by Plaintiffs Andrew Wolf and Hans Kruger, including two motions to reconsider, a motion for leave to conduct additional discovery, and various other motions. *See* Dkts. 170, 173, 176, 193-96.  For the reasons explained below, the Court will deny plaintiffs' motions to reconsider, deny

plaintiffs' motion to conduct additional discovery, and refrain from ruling on the pending motion for summary judgment until plaintiffs have filed a substantive response.

# II
# BACKGROUND

Plaintiffs are prisoners in the custody of the Idaho Department of Correction. They are proceeding pro se in this action, which has been narrowed to two plaintiffs pursuing one defendant on three claims. In the original complaint, three plaintiffs alleged twenty-four claims against sixteen defendants. *See Compl.*, Dkt. 7. The Court has repeatedly denied plaintiffs' efforts to certify this as a class action.

Two of plaintiffs' remaining claims deal with conditions of confinement at the Idaho State Correctional Center (ISCC) in Kuna, Idaho, and the third is a failure-to-protect claim. The details of these claims are as follows:

*Twelfth Claim.* In the twelfth claim for relief, Plaintiff Andrew Wolf alleges that defendant failed to provide adequate dayroom space in the West Wing Living Units of ISCC. *See Compl.,* Dkt. 7, ¶ 338.

*Twentieth Claim:  Out-of-Cell Time at ISCC.* In the twentieth claim, Wolf alleges that prison officials fail to adequately staff ISCC, which resulted in Wolf's failure to receive enough time outside his prison cell. *See Compl.*, Dkt. 1, ¶ 349.[1]

---

[1] This claim originally targeted two prisons: ISCC and Idaho State Correctional Institution (ISCI), also in Kuna. In a previous ruling, however, the Court granted defendant's motion for summary judgment on issues related to the ISCI claims within the twentieth claim. So at this point, Wolf is pursuing the inadequate staffing/out-of-cell-time claim only as it relates to ISCC.

*Twenty-Fourth Claim*: *Failure to Protect.* In the twenty-fourth claim, Plaintiff Hans Kruger alleges that the prison failed to protect him from attacks by other inmates.

In March 2016, this Court granted summary judgment in defendant's favor on numerous other claims. *See Mar. 31, 2016 Order*, Dkt. 160. This order left plaintiffs with the three claims just discussed. The Court did not schedule a trial on these claims, however, opting instead to allow for further summary judgment proceedings in accordance with Federal Rule of Procedure 56(e).

Regarding the twenty-fourth claim, the Court decided that Plaintiff Kruger was entitled to review certain documents related to prisoner-on-prisoner assaults, which defendant had previously refused to produce. *See id.*, at 7. The Court ordered defendant to produce these documents to Kruger and, after doing so, allowed defendant to renew his motion for summary judgment on the twenty-fourth claim. Kruger would then have an opportunity to file a new response brief, potentially supported with new factual evidence gleaned from the additional discovery materials provided to him. *See id.*, at 35.

Regarding the twelfth and twentieth claims, Kempf's sole argument on summary judgment was that these claims were moot. The Court disagreed, but allowed Kempf the opportunity renew his motion to address those claims on the merits. *See Mar. 31, 2016 Order,* Dkt. 160, at 18, 19.

After the Court issued this ruling, plaintiffs filed two motions to reconsider, plus a motion for leave to conduct additional discovery. *See* Dkts. 170, 173, 176. Later, defendant filed a second motion for summary judgment regarding the three remaining claims. *See* Dkt. 179. The Court will address each of these motions in turn (as well as

various additional motions), beginning with plaintiffs' request that this Court reconsider its March 31, 2016 Order.

## III
## DISCUSSION

**A.     Motion to Reconsider Summary Judgment in Defendant's Favor (Dkt. 173)**

    **1.  Governing Legal Standard**

Plaintiffs rely on Federal Rule of Civil Procedure 60(b) to support their motions to reconsider. *See* Dkts. 170, 173.  That rule does not apply here because this Court has not entered a final judgment. *See Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969) ("By its terms Rule 60(b) applies only to relief from a final judgment.").  Nevertheless, "as long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001).

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Sissoko v. Rocha*, 440 F.3d 1145, 1153-54 (9th Cir. 2006).  The Court will apply this standard to both motions to reconsider (Dkts. 170, 173).

    **2.  Newly Discovered Evidence**

Plaintiffs ask this Court to reconsider its March 2016 summary judgment ruling based on their assertion that they have recently discovered new evidence.  The evidence

consists of two multi-page charts, which the parties refer to as staffing matrixes, or staffing rosters. The charts list which prison employee is slated to cover a particular post at the prison for the year 2016. An excerpt of the ISCI chart is shown here:

### Idaho State Correctional Institution
### Master Roster—2016

| Lieutenants | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Staff[2] | Post | Position | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Supervisor |
| | 1L | Shift Commander, 1st Shift | | | | | | X | X | Sammons, David |
| | 2L | Shift Commander, 2nd Shift | X | X | | | | | | Sammons, David |
| | 3L | Shift Commander, 3rd Shift | | | | | | | | Sammons, David |
| | 4L | Housing Lieutenant | X | | | | | | X | Sammons, David |
| | 5L | Fixed Relief | 3rd | 3rd | X | X | Rlf | 1st | 1st | Sammons, David |
| | 6L | External Security/Fixed Relief | 2nd | 2nd | ES | ES | ES | 1st | 1st | Sammons, David |
| | 7L | Relief | | | | | | | | Sammons, David |

*Maxson Dec., attachment thereto, entitled ISCI Master Roster – 2016*, Dkt. 173-4, at 1.

Standing alone, the charts are not helpful to plaintiffs' case. Although plaintiffs say the charts are generally relevant to their assertion that the prisons are understaffed, the charts do not contain enough information to establish that either prison is understaffed, or, more to the point, that Wolf does not receive sufficient time outside his cell due to alleged understaffing. Likewise, even viewing these charts in the context of other evidence presented in connection defendant's summary judgment motion, the charts

---

[2] All entries in this column were redacted.

do not lead to either inference.  Similarly, the charts do not shore up plaintiffs' defenses on any other claim that was summarily adjudicated in the Court's March 31, 2016 Order. The Court will therefore deny plaintiffs' motion for reconsideration based on this evidence.  After all, even assuming this evidence is newly discovered, plaintiffs would still need to demonstrate that it is of such a magnitude that if the Court had known of it earlier, the outcome would likely have been different.  *Cf. Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093(9th Cir. 2003) (in seeking relief from judgment, the moving party must, among other things, demonstrate that the new evidence is "'of such magnitude that production of it earlier would have been likely to change the disposition of the case.'") (citation omitted).  Plaintiffs cannot clear this hurdle.

     Perhaps recognizing that the new evidence is not particularly helpful to their case, plaintiffs do not argue that the charts themselves – either standing alone or viewed in the context of other evidence – would have made any difference.  Instead, they argue that if they had had these charts earlier in the litigation, they would have been prompted to undertake other discovery that would have allowed them to dispute defendant's evidence establishing that inmates receive sufficient out-of-cell time.  *See* Dkt. 173, at 6 (citing Dkt. 137-7, at 8, ¶ 26).  Ultimately, then, plaintiffs are not asking the Court to reconsider its earlier ruling on the basis of newly discovered evidence.  They are asking the Court to modify the scheduling order by reopening the discovery period.  As plaintiffs recognize in a separately filed motion to reopen discovery, *see* Dkt. 176, such a request is governed by Federal Rule of Civil Procedure 16.  The Court will therefore address the remainder of the arguments advanced in the motion for reconsideration in the context of ruling on

plaintiffs' motion to reopen discovery.  *See discussion infra,* ¶ III.C.

### B.      Motion to Reconsider Discovery Order (Dkt. 173)

Before resolving the motion to reopen discovery, the Court will resolve plaintiffs' motion to reconsider a discovery ruling.  Plaintiffs contend that this Court mistakenly "failed to address all of the Motion to Compel Discovery documents" when it resolved an earlier motion to compel.  *See Motion,* Dkt. 173, at 9.

The Court is not persuaded. The motion to compel at issue related to 417 separate document requests plaintiffs had propounded.  *See* Dkt. 107.  Generally speaking, many of the documents plaintiffs sought do not appear proportional to needs of this case.  *See generally* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering . . . [various factors].") (emphasis added).  For example, although plaintiffs' central complaint is that the prisons are overcrowded, they asked Kempf to produce documents related to the prison's standard operating procedures (SOPs) for hundreds of different topics that do not appear to have any bearing on the issue of overcrowding.  The requested SOPs include those related to, among other things: (1) cash receipts; (2) encumbrances; (3) fiscal policy; (4) grant management; (5) offender trust accounts; (6) purchasing and contracting; (7) quality management systems; (8) internship opportunities and management; (9) hygiene of officers; (10) offender barbers; (11) facility housekeeping (12) radio/TV/movie programs in institution; (13) religious activities; (14) special needs treatment plans; and (15) use of telephones by offenders. *See Plaintiffs' First Req. for Prod. of Docs.*, Dkt. 107-1 (Request Nos. 60, 72, 74, 78, 79,

87, 126, 127, 152, 174, 177, 178, 179, 184, 213).

In their motion to compel, plaintiffs continued the same shotgun approach. In a single, relatively brief motion, they asked the Court to compel defendant to produce documents responsive to their 417 requests, some of which requested documents dating back to 2005. *See generally* Dkt. 107, at 9. Despite seeking such a sweeping order, plaintiffs' motion largely failed to direct the Court's attention to any particular document request, or even to specific categories of documents. Instead, plaintiffs typically made generalized arguments such as this one: "Plaintiffs would seek this Court to compel defense counsel to produce discovery documents requested that go back to January 1, 2005, based upon the Balla Final Expert Master Report of Chase Riveland concerning the 12, 13th, 20th, 21st Claims for Relief on Inadequate Staffing and Lack of Out-of-Cell Time at ISCC and ISCI." *Motion to Compel*, Dkt. 107, at 6.[3]

The Court observed that such general arguments were not persuasive, particularly when plaintiffs sought so many categories of documents spanning such a wide range of topics and such a lengthy period. The Court therefore denied plaintiffs' request for a blanket order compelling defendant to provide documents responsive to all 417 requests. In an effort to move the litigation along, however, the Court provided specific guidance on two requests (Nos. 27 and 28), which were the only requests plaintiffs specifically and

---

[3] Plaintiffs discussed some requests more specifically in an affidavit filed with their reply brief. *See Wolf Aff.*, Dkt. 110-1. This affidavit, however, is filled with conclusory statements that did not (and do not) persuade the Court to issue a broader order. Further, by waiting until reply, plaintiffs did not give defendant an opportunity to respond to these arguments.

**MEMORANDUM DECISION AND ORDER - 8**

meaningfully discussed in their motion. *See* Dkt. 107, at 6-7 (discussing document requests 27 and 28).

The Court has reviewed its ruling, as well as the underlying motion papers, and it is not persuaded to vacate or modify its order. Plaintiffs chose to make general arguments, loosely based on hundreds of document requests, which, in turn, often suffered from a lack of focus. The Court did the best it could with such a motion – by specifically dealing with the requests that were actually raised in the motion, and otherwise issuing a blanket denial of plaintiff's sweeping motion to compel. The Court will therefore deny Plaintiff's motion to the extent plaintiffs are asking the Court to compel any further responses from defendant as to these 417 requests.

**C.     Motion to Reopen Discovery (Dkt. 176)**

The next issue is whether the Court should modify the scheduling order by reopening the discovery period. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (citation and internal quotation marks omitted). The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id*. at 609. If the party seeking the modification "was not diligent, the inquiry should end" and the motion to modify should not be granted. *Id.* While prejudice to the party opposing the modification may provide

additional reasons for denying the motion, it is not required to deny a motion to amend under Rule 16(b). *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1295 (9th Cir.2000).

Plaintiffs advance several arguments to justify their motion to reopen discovery, but none establish the requisite good cause.

### 1. Defendant's Alleged "Fraud" Relating to Document Request No. 360

Plaintiffs' central argument is that defendant committed "fraud" during the discovery period. In a nutshell, plaintiffs correctly point out that during informal discovery meetings, Kempf said he would produce the prison staffing charts discussed above, but then later said he would not produce those very documents. The relevant request is No. 360, which is shown here, along with its corresponding response:

> **REQUEST NO. 360:** Produce the staffing matrix for ISCI from January 1, 2005 to present, which sets forth the following:  1) all three shifts; 2) the posting for each officer; 3) posting for each non-security personnel; [and] 4) calendar days that each is scheduled.
>
> **RESPONSE TO REQUEST NO. 360:** Defendant objects to this request on the grounds that it seeks information that is outside the timeframe alleged in plaintiffs' complaint, and therefore, is not relevant nor likely to lead to the discovery of admissible relevant evidence. Defendant further objects on the grounds that this request is overly broad and unduly burdensome.

Dkt. 173-3, at 21 (page 86 of the written response). In earlier correspondence, Defendant Kempf's counsel said she would produce the documents so long as plaintiffs limited their request to the period 2011 to present. *See Oct. 10, 2014 Letter from Leslie Hayes to Plaintiffs*, Dkt. 107-3; *Feb. 13, 2015 Letter from Leslie Hayes to Plaintiffs*, Dkt. 107-4, at 3. Kempf now says that regardless of what happened during informal negotiations, his formal, written response controls.

The Court does not condone this behavior by defense counsel, but it cannot conclude that defendant defrauded plaintiffs or the Court.  The parties were negotiating 417 wide-ranging document requests and defense counsel's initial letter to plaintiffs discussing the document requests indicated that defendant reserved the right to later object to the requests, regardless of what was said in the letter.  *See Oct. 10, 2014 Letter,* Dkt. 107-3, at 1 ("Please note that I reserve the right to . . . assert additional objections [or] withhold documents . . . and that any statements provided herein that I will provide you with certain documents does not constitute a waiver of . . . other general objections to the productions of those documents.").

Further, by April 2015 – when defendant served his formal, written responses – plaintiffs were on notice that defendant did not intend to produce the requested staffing matrix, notwithstanding earlier, contrary representations.  At that point, plaintiffs could have brought this issue to the Court's attention with a targeted motion to compel.  They did not do so.  Granted, they filed the sweeping motion to compel discussed above, but this motion largely failed to discuss specific document requests. More to the point, this motion did not place any special attention on Document Request No. 360.  In fact, plaintiffs filed this motion before Kempf had even served his formal written responses.  The formal, written response was served during the briefing period for that motion to compel, yet despite filing numerous other documents (including a "supplemental reply" related to that very motion, *see May 27, 2015 Supp. Reply,* Dkt. 114), plaintiffs did not specifically point out that defendant had reneged on an informal agreement regarding Request No. 360.  The upshot is that defendant's alleged "fraud" regarding Request No.

360 was not brought to the Court's attention until nearly one year later. In the meantime, plaintiffs effectively dropped the issue.

On these facts, the Court cannot conclude that plaintiffs were diligent in their efforts to compel Kempf to produce the staffing rosters. Accordingly, the Court cannot find that they established good cause to conduct additional discovery based on any information they might have learned by viewing the rosters. For all these reasons, the Court will deny plaintiffs' motion to reopen the discovery period based on Kempf's alleged fraud regarding Document Request No. 360.

### 2. Defendant's Alleged Fraud Related to Other Document Requests

Likewise, the Court does not find good cause to reopen the discovery period based on plaintiffs' complaints about other document requests. In that regard, plaintiffs generally say Kempf's alleged "fraud" is not restricted to Document Request No. 360. They say Kempf failed to produce responsive documents to hundreds of other requests. *See* Dkt. 173, at 5, 8. But once again, plaintiffs do not discuss the other requests in any meaningful way. Instead, they attach a cryptic, two-page chart to their motion papers, which is meant to flesh out the details regarding the alleged misconduct. *See Ex. 78 to Plaintiffs' Motion,* Dkt. 173-5. A representative portion of the chart is shown here:

| **Discovery Disclosures Agreed To** ||
| --- | --- |
| **Request or Production Nos.:** | **Actually Produced:** |
| RFP Nos. 45-260. Per Docket 160 RFP Nos. 60 and 70 became relevant. | RFP Nos. 69-70, 95-96, 108, 110, 119, 128 and 208. |

*Chart entitled "Discovery Disclosures Agreed To",* Dkt. 173-5.

**MEMORANDUM DECISION AND ORDER - 12**

The few lines of text shown here are presumably meant to convince the Court to compel defendant to provide further response to over 200 separate document requests (Nos. 45-260). Yet there is simply not enough explanation or background provided to convince the Court that defendant misbehaved during discovery regarding these requests.

The remainder of the chart suffers from similar defects and thus fails to persuade the Court that the discovery period should be reopened due to any alleged fraud.

### 3. Plaintiffs' Other Arguments

The Court has considered all of plaintiffs' remaining arguments in support of their request to reopen discovery and finds them unpersuasive. Among other things:

Wolf suggests he should be allowed to conduct additional discovery because his claim related to out-of-cell time was not dismissed on summary judgment. *See Motion,* Dkt. 176, at 3. But the mere fact that a claim survived a motion for summary judgment does not justify reopening discovery.

Wolf also argues that because Kempf and his staff assumed control of ICC in July 2014, plaintiffs should be able to conduct discovery about staffing and building schedules after the 2014 change in management. *Id.* at 4. But the discovery period remained open until after July 2014, meaning that plaintiffs have already had the opportunity to conduct discovery regarding ICC (renamed ISCC) after the change in management occurred. In fact, plaintiffs' document request, discussed above, was propounded in September 2014.

Plaintiffs next say they should be permitted to conduct additional discovery regarding Kruger's failure-to-protect claim. Here, the Court previously set up a phased discovery plan: In March 2016, defendant was ordered to produce documents relating to

prisoner-on-prisoner assaults at the prison during the one-year period before Kruger filed his complaint. *See* Dkt. 160, at 6-7, 34. (For ease of reference, the Court will refer to these documents as "Assault Packets"). If Kruger established that he was subjected to a serious risk of harm during that period, then the Court indicated it would consider ordering the production of additional documents. *Id.* at 7-8. In this motion, Kruger does not make such a showing, so the Court will not order additional discovery.

For all the reasons set forth above, the Court does not find good cause to modify the scheduling order. It will therefore deny plaintiffs' motion to reopen discovery.

### D.     Motion for a Protective Order – Documents Related to Prisoner-on-Prisoner Assaults (Dkt. 170)

Plaintiffs' next motion is framed as a motion to reconsider, but the issue is actually whether this Court should issue a protective order related to documents Kempf has produced to Kruger – and only to Kruger – during discovery. As noted above, in March 2016, this Court ordered Kempf to produce Assault Packets to Plaintiff Kruger. Defendant complied with this order by allowing Kruger to examine these documents, but he has refused to allow Kruger to share these documents with any other inmate – including Plaintiff Wolf.

Wolf says he should be allowed to view the documents because they are "relevant to Wolf's overall Eighth Amendment Claim [of] systemwide overcrowding and [he] should be permitted access to it." *Reply,* Dkt. 175, at 6. Yet Wolf no longer has a failure-to-protect claim to pursue. In its March 2016 Order, the Court dismissed Wolf's failure-to-protect claim because he failed to exhaust administrative remedies. *See Mar.*

*31, 2016 Order,* Dkt. 160, at 23-30.  Thus, the only remaining failure-to-protect claim at issue in this action belongs to Kruger.  Further, at the same time the Court dismissed Wolf's failure-to-protect claim, the Court ordered defendant to "produce *to Plaintiff Kruger* documents related to inmate-on-inmate assaults during the one-year period before the complaint was filed." *Id.* at 34 (emphasis added).  Citing this language of the order, along with safety and security concerns, Kempf has refused to allow Wolf to view the Assault Packets.  *See generally Cluney Aff.*, Dkt. 174-1.

Kempf should have sought a protective order clarifying that Kruger would not be allowed to share the documents with other inmates, including Wolf.  Or, at a minimum, Kempf should have sought a clarifying order from this Court.  Nevertheless, based on the record in this case, the Court finds good cause to issue a protective order.

Federal Rule of Civil Procedure 26(c)(1) provides that a Court may issue a protective order for good cause shown.  IDOC's Deputy Chief of Prisons Shannon Cluney explains that disseminating the documents provided to Kruger to other inmates could present safety and security risks at the prison.  *See Cluney Aff.*, Dkt. 174-1, ¶ 7.  Specifically, it seems that the key concern is inmate safety, because inmates who examine the documents might be able to figure out which inmates are providing information to the prison.  Then the reporting inmate's safety is placed at risk, and, further, inmates might be less likely to report information in the future.  *Id.*  Cluney also says inmates with access to the documents could potentially use the information contained in those documents to manipulate other inmates.  *Id.*

Under these circumstances, the Court will issue a protective order preventing

Kruger from sharing these documents with any other inmate, including Wolf.

Finally, the Court is not persuaded by Wolf's argument that Kruger is incapable of pursuing these claims unless Wolf is allowed to view the Assault Packets. Nor is the Court persuaded that Kempf effectively waived any right to preclude Wolf from viewing these documents by allowing Wolf to attend Kruger's deposition or because Wolf has apparently already viewed some confidential documents. The Court will therefore deny Wolf's motion related to the Assault Packets and will instead issue a protective order allowing Kruger to view the documents, but preventing him from copying or disseminating the documents to others without a prior Court order.

The Court will also deny plaintiffs' alternative request to appoint counsel. The Court has previously denied this request and will do so again for the same reasons. *See June 13, 2013 Order,* Dkt. 27, at 22-24; *Mar. 16, 2016 Order,* Dkt. 158, at 7.

### E.    Defendant's Second Motion for Summary Judgment (Dkt. 179)

Defendants filed their second motion for summary judgment in July 2016. *See* Dkt. 179. In the ensuing several months, plaintiffs have not filed a substantive response. The Court recently ordered plaintiffs to file a substantive response by no later than March 8, 2017. The Court will therefore refrain from ruling on the pending motion for summary judgment, along with various related motions (including motions to seal or unseal documents and a request for judicial notice) until the summary judgment motion is fully briefed.

## ORDER

**IT IS ORDERED that:**

1. Plaintiffs' Motion to Alter, Amend, Vacate or Reconsider Re: Dkt. 168 (Dkt. 170) is **DENIED.**

2. Plaintiffs' Motion to Reconsider Re: Docket 160 (Dkt. 173) is **DENIED**.

3. Plaintiff Hans Kruger shall be allowed to view the Assault Packets, but he shall not be allowed to copy the Assault Packets or disseminate their contents to any other person without a prior order from this Court.

4. Plaintiff's Motion for Leave to Conduct Further Discovery (Dkt. 176) is **DENIED.**

5. The Court will **REFRAIN FROM RULING** on Defendant's Second Motion for Summary Judgment (Dkt. 179) and the various, related motions – including motions to seal and unseal (Dkts. 178, 194, 195) and plaintiffs' request for judicial notice (Dkt. 196) – until plaintiffs have had the opportunity to submit a substantive response to the motion and defendant has had the opportunity to reply. *See Feb. 14, 2017 Order,* Dkt. 200 (ordering plaintiffs to submit any substantive response by no later than March 1, 2017, with the optional reply brief due March 8, 2017).

6. Plaintiffs' Motion for Leave to File More than Three Motions (Dkt. 191) is **DENIED.**

DATED: March 6, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court