UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREW J.J. WOLF, R. HANS KRUGER, and DAVID S. BEGLEY,<br><br>    Plaintiffs,<br><br>        v.<br><br>C.L. "BUTCH" OTTER; LAWRENCE WASDEN; IDAHO STATE BOARD OF CORRECTIONS; ROBIN SANDY, J.R. VAN TASSEL; JAY NEILSON; IDAHO COMMISSION OF PARDONS AND PAROLE; OLIVIA CRAVEN; BILL YOUNG; MARK FUNAIOLE; JANE DRESSEN; NORMAN LANGERAK; MIKE MATTHEWS; BRENT REINKE; CORRECTIONS CORPORATION OF AMERICA, INC.; TIM WENGLER; CORRISON INC., each sued in their individual and official capacities and their successors in office,<br><br>    Defendants. | Case No. 1:12-cv-00526-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**I**
**INTRODUCTION**

Before the Court is Defendant Henry Atencio's Second Motion for Summary Judgment (Dkt. 179) and various related motions.  (Defendant Atencio, as the current director of IDOC, is substituted for former director defendants Kevin Kempf and Brent

Reinke.  *See* Fed. R. Civ. P. 25(d)).  For the reasons explained below, the Court will grant Atencio's motion.

## II
## PROCEDURAL BACKGROUND

Plaintiffs, prisoners in the custody of the Idaho Department of Correction (IDOC), are proceeding pro se in this civil rights action.  Plaintiffs claim that defendants violated the Eighth Amendment in several ways, all stemming from prison overcrowding.  The following three claims remain:

*Twelfth Claim*. In the twelfth claim for relief, Plaintiff Andrew Wolf alleges that Defendant Atencio failed to provide adequate dayroom space in the West Wing Living Units of the Idaho State Correctional Center (ISCC, formerly known as ICC[1]).  *See Compl*., Dkt. 7, ¶ 338.

*Twentieth Claim*.  In the twentieth claim, Wolf alleges that prison officials failed to adequately staff ISCC, which resulted in Wolf's failure to receive enough time outside his prison cell. *See id.* ¶ 349.[2]

*Twenty-Fourth Claim*.  In the twenty-fourth claim, Plaintiff Hans Kruger alleges that the prison failed to protect him from attacks by other inmates.

---

[1] IDOC began managing ISCC in July 2014.  Before that, a private corporation operated the prison under the name "Idaho Correctional Center" (ICC).

[2] This claim originally targeted two prisons: ISCC and Idaho State Correctional Institution (ISCI), also in Kuna. In a previous ruling, the Court granted Atencio's motion for summary judgment on issues related to the ISCI claims within the twentieth claim. *See Mar. 31, 2016 Order,* Dkt. 160, at 34.  So at this point, Wolf is pursuing the inadequate staffing/out-of-cell-time claim only as it relates to ISCC.

Plaintiffs seek injunctive relief only on these claims.

### III
### FACTUAL BACKGROUND

Plaintiffs did not file a substantive response to Atencio's second motion for summary judgment.  Likewise, they did not submit a statement of disputed facts. Accordingly, in resolving this motion, the Court relies on Atencio's fact statement and supporting evidentiary materials submitted with this motion, as well as the materials plaintiffs submitted in the first round of summary-judgment proceedings.  *See e.g., Defendant's Separate Statement of Undisputed Facts ("SOF"),* Dkt. 179-2; *Plaintiff's Statement of Disputed Facts,* Dkt. 137-2. The relevant facts are briefly summarized here.[3]

### A.    Facts Relevant to Plaintiff Kruger's Claim

In 1993, Plaintiff Hans Kruger was sentenced to 30 years in prison, through March 2023.  During 23 years of incarceration, Kruger was assaulted by other inmates on two occasions, once in 1994 when he was incarcerated at a different prison (Idaho Correctional Institution – Orofino), and a second time in 2003, when he was incarcerated at ISCI.  Kruger did not report either incident or seek medical treatment.

Kruger observed other inmates fighting on two occasions in December 2010. IDOC responded each time, stopped the fighting, and removed the inmates.  Kruger did

---

[3] Plaintiffs said they intended to use pleadings filed in other cases to oppose Atencio's second motion for summary judgment.  *See Request for Judicial Notice,* Dkt. 196.  They did not follow through, however.  Further, the Court is not convinced that any of the five cases listed in plaintiffs' request for judicial notice are relevant to this case.  Accordingly, the Court will deny the request.

not file a concern form or ask for protective custody.  SOF ¶¶ 8-9.

In the summer of 2012, while he was in his cell, Kruger saw one inmate attack another.  IDOC removed the victim, offered him medical care and protective custody, and transferred him to a different unit.  IDOC also disciplined the attacker.  *Id.* ¶ 11-13.

Kruger also testified that in late August 2012, the A Tier of Unit 15 was locked down after members of the Aryan Knights gang demanded that sex offenders pay "rent" (ramen noodles from the commissary) to stay on the tier.  ISCI investigated the matter and found that the Aryan Knights had coerced one sex offender to attack another for refusing to pay rent.  Both inmates were taken to administrative segregation and protective custody was offered to the victim as well as to two other inmates who complained the Aryan Knights were demanding rent from then.  *Id.* ¶ 15.

That same day, Kruger submitted a concern form to Warren Blades.  He submitted two more concern forms on September 8, 2012.  Warden Blades responded to each concern form, and on September 17, 2012, Kruger was transferred to a different unit and tier.  *Id.* ¶ 16-18.

Shortly afterward, Kruger sued.  *See Oct. 15, 2012 Compl.*, Dkt. 7.  During his deposition, Kruger testified regarding events occurring during the pendency of this lawsuit, including a November 2014 attack and a May 2016 fight between inmates. Kruger submitted various grievances and concern forms during the past four years, including September and October 2015 concern forms, wherein he complained of an influx of "young aggressive thugs" and "known active gang members from differing/opposing gangs."  SOF ¶ 21; *see also id.* ¶ 22, ¶ 28.  Kruger said he was

purposely vague in some these forms.  He did identify four inmates as aggressors in a later concern form, but these inmates did not threaten him and he was not afraid of them. *Id. ¶¶* 23-27.  These four inmates are no longer housed at ISCI.  *Id.* ¶ 27.

At his summer 2016 deposition, Kruger testified that he had not been threatened by other inmates in the past year, and that he was in fairly good standing with the other inmates.  He did say, however, that in early June 2016 an inmate in Unit 14 told Kruger that the skinheads were "gunning" for him.  *Id.* ¶ 33-34.

**B.      Facts Relevant to Plaintiff Wolf's Claims**

Plaintiff Wolf has been housed at both ICC (now ISCC) and ISCI during the past decade.  He was housed at ICC from April 2008 through April 2011, when he was transferred to ISCI.  Then, after being transferred to other prison facilities, Wolf returned to ICC where he remained until October 2013, when he was again transferred to ISCI. Wolf remains at ISCI as of this date.

The ISCC Warden has submitted an affidavit demonstrating that ISCC inmates have multiple opportunities throughout the day to be outside their cells.  *See Blades Aff.,* ¶¶ 1-21; Ex. A thereto.  Specifically, in the morning, afternoon, and evenings, inmates may leave their cells.  They have opportunities to work, attend school, use the library and the Legal Resources Center, or the gym.  Inmates may also stay inside and watch television or read or access the dayroom.  Inmates generally have at least 20 hours of scheduled gym or ball field time each week.

**IV**
**DISCUSSION**

**A.    Motion to Stay Summary Judgment**

In an earlier ruling, this Court denied plaintiffs' motion to reopen discovery, and ordered plaintiffs to file a substantive response to the pending motion for summary judgment.  Plaintiffs have not filed such a response.  Instead, they moved to "stay" the summary judgment motion.  *See* Dkt. 201.  This stay motion mainly rehashes arguments this Court previously rejected.  *See Mar. 6, 2017 Order,* Dkt. 202.  Plaintiffs do, however, offer one new justification for "staying" a ruling on Atencio's summary-judgment motion.  They say they because they are unable to afford a copy of Defendant Kruger's deposition transcript, the Court should withhold ruling, and, in the meantime, either: (1) order defendant to provide a copy of the transcript; (2) bar defendant from using the transcript to support his summary-judgment motion; or (3) use Court funds to pay the court reporter for a copy of the transcript.

The Court will deny this motion for three reasons.

First, plaintiffs delayed bringing this motion.  Kruger was deposed in the summer of 2016, yet plaintiffs waited until February 2017 to bring this motion.

Second, Plaintiff Kruger was present at his own deposition, so he has first-hand knowledge of what occurred there.  (Plaintiff Wolf also attended the deposition).  Kruger also took notes when he reviewed his transcript for errors.  *See Motion,* Dkt. 201, at 10.

Third, plaintiffs cite no authority supporting their request, and there is no provision in 28 U.S.C. § 1915 requiring defendants or the Court to pay indigent

defendants' litigation costs.  The Court will therefore deny plaintiffs' motion.  *Cf. Rivera v. DisAbato*, 962 F. Supp. 38, 40 (D.N.J. 1997) (denying a pro se prisoner litigant's similar request, observing "plaintiff's obligations, even as an indigent litigant, to finance his own litigation expenses cannot be arbitrarily thrust upon defendants").

**B.      Motion to Stay Pending Interlocutory Appeal**

Plaintiffs also ask the Court to stay this case pending the Ninth Circuit's resolution of an interlocutory appeal.  *See* Dkt. 213 (Mar. 17, 2017 Motion to Stay); Dkt. 206 (Plaintiffs' Notice of Interlocutory Appeal).  The Court will deny this motion.

First, plaintiffs are not appealing a "final decision of the district court."  28 U.S.C. § 1291, so the Ninth Circuit lacks jurisdiction.  *See generally Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981).  Second, even assuming the Ninth Circuit had jurisdiction, the Court would not stay the matter.  Among other things, this action has been pending in this Court since 2012, and the Court is prepared to rule on defendant's second motion summary judgment, which has been pending for several months.  Under these circumstances, a stay would not serve the parties.

**C      Motion for Summary Judgment**

**1.      The Governing Legal Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural

shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." _Id._ at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any _material_ fact – a fact "that may affect the outcome of the case." _Id._ at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. _Id._ at 255. Direct testimony of the non-movant must be believed, however implausible. _Leslie v. Grupo ICA_, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. _McLaughlin v. Liu_, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." _Liberty Lobby_, 477 U.S. at 255. If a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. _Id._

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. _Devereaux v. Abbey_, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out

the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

### 2.      Plaintiff Wolf's Twelfth and Twentieth Claims

The Court will grant summary judgment on Wolf's claims related to ICC (now ISCC). In his two remaining claims, Wolf alleges that Defendant Atencio violated the Eighth Amendment by (1) not providing adequate dayroom space at ICC; and (2) not providing adequate out-of-cell time at ICC. *See Initial Review Order,* Dkt. 27, at 10; *Compl.*, Dkt. 1, ¶¶ 338-39, 349-50.

In his first summary-judgment motion, Atencio argued that Wolf's claims related to ICC were moot because Wolf has not been housed at ICC since April 2011. The court rejected this argument, explaining that IDOC manages the prison and could easily house Wolf there. (Wolf seeks injunctive relief only on this claim.) Defendant was given the

opportunity, however, to submit supplemental materials explaining current conditions at ISCC.  *See Mar. 30, 2016 Order,* Dkt. 160, at 17-20.

Defendant responded with an affidavit from Warden Randy Blades, which establishes that ISCC inmates have multiple opportunities throughout the day to be out of their cells.  *See* Dkt. 184-1.  Wolf has failed to submitted any evidence creating a genuine dispute regarding the material facts, either in opposition to this motion or in responding to the first motion for summary judgment.  The Court will therefore grant summary judgment in Atencio's favor on the twentieth claim.

The Court will also grant summary judgment in Atencio's favor on the twelfth claim, which deals with the size of the dayroom at ISCC.  Here, as Atencio points out, the size of the prison dayroom, *per se*, does not create a constitutional deprivation.  The larger issue is whether ISCC inmates receive ample time outside their cells.  They do.  Atencio is therefore entitled to summary judgment on Wolf's twelfth claim.

### 3.      Kruger's Twenty-Fourth Claim for Failure to Protect

The final claim at issue is Kruger's failure-to-protect claim.

The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But not every injury "suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  To establish a failure-to-protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "deliberate indifference" to the

inmate's health or safety. *Id.* A prison official acts with deliberate indifference if he

"knows of and disregards an excessive risk to inmate health or safety" – that is, "the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

A prisoner alleging an Eighth Amendment violation need not show that prison officials

believed that harm would actually occur; "it is enough that the official acted or failed to

act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A prison

official's knowledge of the risk "can be proven through circumstantial evidence, such as

by showing that the risk was so obvious that the official must have known about it."

*Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir.2004). A prison official, however, may

avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not

averted." *Farmer*, 511 U.S. at 844.  Further, the mere negligent failure to protect a

prisoner from assault does not comprise a constitutional violation. *See Davidson v.

Cannon*, 474 U.S. 344, 347-48 (1986).

In an earlier order, the Court held that although Kruger's concern forms did not

signal to the prison that Kruger was personally subjected to any serious threat of harm,

Kruger should nonetheless be allowed further discovery so that he could attempt "to

prove that, based on past assaults, the risk was so obvious that defendants must have

known that plaintiffs similarly situated faced a substantial risk of serious harm . . . ."

*Mar. 30, 2016 Order*, Dkt. 160, at 33.

Defendant has since provided additional discovery materials to Kruger, but Kruger

has not come forward with any additional argument or evidence demonstrating that,

based on past assaults, he has faced and continues to face a substantial risk of serious harm. Additionally, even assuming Kruger faced a substantial risk of serious harm at some point, Kruger has not shown that Defendant Atencio – both now, and at the time the suit was filed – knowingly and unreasonably disregarded an objectively intolerable risk of harm and will continue to do so. Granted, there have been isolated incidences of violence during Kruger's incarceration, but IDOC responded appropriately. Similarly, although Kruger says gang members are housed with older inmates, this does not rise to the level of a constitutional violation. *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160-61 (9th Cir. 2013). The Court will therefore grant Atencio's motion for summary judgment on Kruger's twenty-fourth claim for relief.

**D.     Motions to Seal**

Finally, the Court will address two pending motions to seal (Dkts. 162, 178).[4]

Earlier in this litigation, the Court ordered the parties to seal or redact documents containing the name of inmates who had been assaulted by others. This was because plaintiffs' complaint identified various inmates who had allegedly been harassed or injured by other inmates. Plaintiffs identified these individuals by name in a separate exhibit, which the Court sealed. *See Initial Review Order,* Dkt. 27, at 26 ("This sensitive information justifies sealing the documents . . . at this time.")

---

[4] Plaintiffs filed two pleadings in response to Atencio's July 29, 2016 motion to seal, including: (1) an "Opposition . . . and Motion to Unseal Docket Numbers 178-184," *see* Dkt. 194; and (2) a "Motion to Seal Exhibit 80," *see* Dkt. 195. The Court will construe both pleadings as oppositions to the July 29, 2016 motion to seal.

Later, plaintiffs complained when defendant identified four of the alleged victims (A, B, E, and H) by name.  The Court granted plaintiffs' request for a curative order sealing or otherwise redacting identifying information in defendants' filings.  *See Mar. 16, 2016 Order,* Dkt. 148, at 9.

Shortly after the Court entered this order, defendant filed a motion to seal an affidavit, which, among other things, identified various alleged assault victims.  The Court will grant this unopposed motion and seal the April 1, 2016 affidavit (filed at Docket 163).

Next, defendant filed a motion to seal all pleadings and supporting documents submitted in connection with his second motion for summary judgment. *See* Dkt. 178. Plaintiffs oppose this motion, arguing that rather than sealing every document in its entirety, defendant should have instead redacted the documents.  *See* Dkt. 194 and Ex. 80 thereto.

The Ninth Circuit has held that there is a strong presumption of public access to judicial records. *See Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*, 447 F.3d at 1178)

Defendant's motion to seal sweeps too broadly.  The intent of the Court's earlier order was simply to protect the identities of inmate assault victims, which did not require defendant to seal every single page of every document filed in support of his pending

motion for summary judgment, including all briefs, affidavits, and exhibits.  Rather, a better approach would have been to redact names and identifying information of assault victims within those documents. Plaintiffs indicate that defendant could properly redact some documents by making certain, specific redactions.  *See Sealed Ex. 80,* Dkt. 194-1. The Court will not scour the many hundreds of pages defendant submitted in connection with their motion for summary judgment for the purpose of specifically identifying each and every name that should be redacted.  Instead, the Court will order defendant to undertake this review of Docket Nos. 178 through 184 (including attached affidavits and exhibits) and then file redacted versions of these documents.  Though the Court will not require it, defense counsel may wish to correspond with plaintiffs in effort to obtain a stipulation between the parties as to which specific names require redaction.  Plaintiffs appear to be willing to undertake this review, and the parties might save considerable time and resources by reaching an agreement, for the Court's review, regarding which specific items require redaction.

For these reasons, the Court will grant in part and deny in part defendant's motion to seal.

### III
### ORDER

**IT IS ORDERED that:**

1.  Defendant Atencio's Motion to Seal (Dkt. 162) is **GRANTED.**

2.  Defendant Atencio's Motion to Seal (Dkt. 178) is **GRANTED in part** and **DENIED in part** as follows: Defendant shall submit redacted versions of all documents

contained within Dockets 178 through 184 within sixty days of this Order in accordance with the guidelines explained above.

3.  Defendant Atencio's Second Motion for Summary Judgment (Dkt. 179) is **GRANTED.**  The Court will enter judgment separately.

4.  The Clerk shall **ADMINISTRATIVELY TERMINATE** plaintiffs' "motions" at Dkts. 194 and 195.  The Court construed these pleadings as response briefs and considered them in ruling on Defendant's July 29, 2016 Motion to Seal.

5.  Plaintiffs' Third Request for Judicial Notice (Dkt. 196) is **DENIED.**

6.  Plaintiffs' Motion to Stay Summary Judgment Motion (Dkt. 201) is **DENIED.**

7.  Defendant's Motion to Seal (Dkt. 211) is **GRANTED**.

8.  Plaintiffs'  Motion to Stay Pending Interlocutory Appeal (Dkt. 213) is **DENIED**.



DATED: March 21, 2017

B. Lynn Winmill
Chief Judge
United States District Court